UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE RAFAEL CRUZ, | Civil Action No. 16-1587 (MCA) |
| Petitioner, | |
| v. | OPINION |
| TISH NALLS-CASTILLO, | |
| Respondent. | |

## ARLEO, UNITED STATES DISTRICT JUDGE:

### I. INTRODUCTION

Petitioner Jose Rafael Cruz, a native and citizen of the Dominican Republic, is a lawful permanent resident ("LPR") of the United States who is being detained by U.S. Immigration and Customs Enforcement ("ICE") pursuant to 8 U.S.C. 1225(b)(2)(A) during the pendency of his removal proceedings. He has filed a Petition for a Writ of Habeas Corpus seeking an Order for an individualized bond hearing before an immigration judge, and has been detained for over 28 months. For the reasons explained below, Petitioner's request for a Writ of Habeas Corpus and an individualized bond hearing is granted.

### II. FACTUAL BACKGROUND

Petitioner was admitted to the United States as a lawful permanent resident on November 30, 1998. (*See* ECF No. 4-1, Harrison Declaration at ¶ 4.) On November 3, 2011, Petitioner was convicted in the New York State Supreme Court of two counts of Criminal Sale of the Controlled Substance in the Third Degree, in violation of New York Penal Law § 220.39(1), and two counts of Criminal Possession of a Controlled Substance in the Seventh Degree, in violation of New York Penal Law § 220.03. (*Id.* at ¶ 5 and Exhibit A.) On December 5, 2011, Petitioner

1

was sentenced to a term of imprisonment of one year on each count. (*Id.*) On or about January 3, 2012, Petitioner appealed his convictions.[1] (*Id.* at ¶ 5.)

Following his convictions, Petitioner departed the United States to visit his elderly mother in the Dominican Republic. Petitioner states in his Petition, and Respondent has not contested, that the trip outside the United States was brief – lasting approximately two weeks. (Pet. at ¶ 10; ECF No. 5-3, Declaration of Sarah Gillman, Exhibit 9.) On or about May 2, 2015, Petitioner arrived at JFK International Airport in New York on a flight from Santiago, Dominican Republic, and sought admission as a returning lawful permanent resident. (Harrison Decl. at ¶ 6.) United States Customs and Border Protection officials determined that Cruz was an inadmissible arriving alien based on his conviction, and paroled him into the United States for removal proceedings. (*Id.* at ¶ 6.) Respondent contends that Cruz has been detained in ICE custody at the Hudson County Correctional Facility in New Jersey since May 3, 2015.[2]

On November 2, 2016, Petitioner sought a bond hearing pursuant to *Lora v. Shanahan*, 804 F.3d 601 (2d Cir. 2015), which was denied by the immigration judge ("IJ") on December 8, 2016. (Gillman Decl. at ¶¶ 9, 11.) On November 25, 2015, Petitioner requested to be released based on ICE's authority to parole arriving aliens under 8 C.F.R. § 253.3(c). (*Id.* at ¶ 10.) On December 17, 2015, ICE denied Petitioner's request for parole. (*Id.* at ¶ 12.) Petitioner's removal proceedings are ongoing.[3]

---

[1] At the time he filed this Petition, his appeal was still pending in state court.

[2] Respondent states that Petitioner was paroled into the United States on May 2, 2015, and was taken into ICE custody on May 3, 2015. It appears, however, that Petitioner was not released from ICE custody during that period. Because the one-day difference does not change the Court's analysis, the Court will use the May 3, 2015 date.

[3] Neither Respondent nor Petitioner has updated the Court about any change in Petitioner's immigration or custody status; the Court's own research indicates that Petitioner is still in immigration custody. The Immigration Judge ordered Petitioner's removal on July 11, 2017, and

2

Petitioner filed the instant Petition on March 22, 2016. (ECF No. 1.) The matter is now fully briefed and ready for disposition.

### III. ANALYSIS

"The writ of habeas corpus shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). At issue here is whether Petitioner's detention of more than twenty eight months pursuant to U.S.C. § 1225(b)(2)(A) violates the Constitution.

Respondent asserts, supported by documentation, that Petitioner was paroled into the country, *i.e.*, not formally admitted, and therefore falls into the ambit of 8 U.S.C. § 1225(b)(2) as an alien seeking admission subject to mandatory detention during the pendency of his removal proceedings. (ECF No. 4, Res. Brief at 6-11.) Respondent further contends that Petitioner's due process rights are not violated by his prolonged detention. (*Id.* at 12-14.) Petitioner, through his counsel, contends that he is not properly detained pursuant to § 1225, and that even if he is properly detained pursuant to § 1225, his detention has become unreasonably prolonged. (ECF No. 1, Pet. at 2-3; ECF No. 5, Reply at 3-12.)

Relying on *Tineo v. Ashcroft*, 350 f.3d 382, 386 (2003), Respondent asserts that Petitioner, upon return from his trip abroad, was "stripped" of his LPR status by the Department of Homeland Security ("DHS") based on his controlled substance convictions and thus may be characterized as an "arriving alien" under the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA").[4] In *Tineo*, the Third Circuit explained that, under the

---

Petitioner's appeal to the Board of Immigration Appeals was docketed on July 31, 2017 and is currently pending.

[4] In *Tineo*, the Third Circuit held that the common law doctrine of *Rosenberg v. Fleuti*, 374 U.S. 449, 461(1963) ("Fleuti Doctrine") did not survive the comprehensive amendments to the IIRIRA, Pub.L. No. 104–208, 110 Stat. 3009–546 (codified as amended at 8 U.S.C. § 1101 et

3

IIRIRA, a lawful permanent resident returning from abroad is "presumptively entitled to retain that status upon reentry unless he falls into one of six subsections [of the IIRIRA], in which case 'he is stripped of his ... status [and] becomes an alien seeking admission as if he were entering for the first time.'" *Mejia v. Ashcroft*, 360 F. Supp. 2d 647, 651 (D.N.J. 2005) (quoting *Tineo*, 350 F.3d at 386); *see also Damus v. Tsoukaris*, No. CV 16-933 (JLL), 2016 WL 4203816, at *2 (D.N.J. Aug. 8, 2016) (explaining same).

Under the IIRIRA, Congress required that lawful permanent residents who have committed certain crimes seek formal "admission" when they return to the United States from abroad. *See* 8 U.S.C. § 1101(a)(13)(C)(v). As relevant here, Petitioner, who has 2011 convictions for controlled substance offenses, falls into that exception and is therefore treated as an applicant for admission upon reentry into this country. *See* 8 U.S.C. §§ 1101 (a)(13)(C); *see also* 8 U.S.C. § 1182(a)(2)(A)(i)(II). As explained by the Third Circuit in *Doe v. Attorney General of the United States*, 659 F.3d 266 (3d Cir. 2011), to detain a person as an arriving alien, under § 1225, the government must have "probable cause to believe that the alien has committed one of the crimes identified in 8 U.S.C. § 1182(a)(2), but need not show a conviction. *Id.* at 272.

Here, Petitioner <u>was convicted</u> of controlled substance offenses in 2011 and is subject to detention as an arriving alien. Thus, the Court agrees with Respondent that Petitioner is properly classified as an arriving alien pursuant to § 1225(b)(2)(A) based on his criminal history.

---

seq.) "In *Fleuti*, the Court held that, under the former § 101(a)(13) of the Immigration and Naturalization Act (INA), LPRs were not required to seek "entry" upon their return from a brief trip abroad and thus face exposure to a charge of being inadmissible. *Bernard v. Attorney Gen. United States*, 682 F. App'x 108, 111 (3d Cir. 2017) (citing *id.* at 461). Under IIRIRA, an alien departing the country, even briefly, must seek admission upon return. *Id.* (citing *Vartelas v. Holder*, 566 U.S. 257 (2012)); *see also Guzman v. Att'y Gen.*, 770 F.3d 1077, 1086 (3d Cir. 2014) ("Prior to IIRIRA, lawful permanent residents with a felony conviction were able to briefly travel abroad and return to the United States without applying for readmission.").

Answering the question of whether Petitioner may be detained under § 1225 does not answer the question of whether the Due Process Clause nevertheless provides relief to an arriving alien, such as Petitioner, once his or her detention becomes unreasonably prolonged.

Neither the Supreme Court nor the Third Circuit has addressed whether due process requires a bond hearing (or other mechanism for review of detention) for aliens detained pursuant to § 1225(b)(2)(A) where the alien's detention has become unreasonably prolonged.[5] As explained below, both the Supreme Court and the Third Circuit have, however, analyzed the constitutionality of detaining criminal aliens pursuant to 8 U.S.C. § 1226(c), which mandates pre-removal order detention for certain criminal aliens, including LPRs who have committed certain crimes.

Analyzing § 1226(c), the Supreme Court has held that detention without the possibility of bond for "the limited period of [] removal proceedings" is constitutional. *Demore v. Kim*, 538 U.S. 510, 530-31 (2003). Section 1226(c), like § 1225(b)(2)(A), mandates the detention of

---

[5] The Ninth Circuit in *Rodriguez v. Robbins* has held that mandatory detention during removal proceedings under § 1225(b) is limited to a reasonable period of time. 804 F.3d 1060 (9th Cir. 2015), *cert. granted sub nom., Jennings v. Rodriguez*, 136 S. Ct. 2489 (2016). The Ninth Circuit stated, "'the mandatory provisions of § 1225(b) simply expire at six months, at which point the government's authority to detain the alien shifts to § 1226(a), which is discretionary and which we have already held requires a bond hearing.'" *Id.* at 1070 (citing *Casas-Castrillon v. Dep't. of Homeland Sec.*, 535 F.3d 942, 948 (9th Cir. 2008)). On June 20, 2016, the Supreme Court granted certiorari in *Jennings v. Rodriguez. See* —— U.S. ——, 136 S. Ct. 2489, ——L.Ed.2d —— – (June 20, 2016) (No. 15–1204) on (1) "[w]hether criminal or terrorist aliens who are subject to mandatory detention under Section 1226(c) must be afforded bond hearings, with the possibility of release, if detention lasts six months"; and (2) "[w]hether, in bond hearings for aliens detained for six months under Sections 1225(b), 1226(c), or 1226(a), the alien is entitled to release unless the government demonstrates by clear and convincing evidence that the alien is a flight risk or a danger to the community; whether the length of the alien's detention must be weighed in favor of release; and whether new bond hearings must be afforded automatically every six months." Petition for a Writ of Certiorari, 2016 WL 1239224, *Jennings v. Rodriguez*, 136 S.Ct. 2489 (No. 15–1204). The Supreme Court did not issue a decision in this matter in its October 2016 term.

removable aliens who have been convicted of certain crimes, and does not provide for a bond hearing once those aliens have been detained.

Following *Demore*, the Third Circuit held that § 1226(c) detention may raise constitutional concerns if detention becomes unreasonably prolonged. *Diop*, 656 F.3d at 223, 235 (finding nearly three year detention unconstitutional under § 1226(c)). In *Diop*, the Third Circuit stated that the reasonableness of a period of detention is "a function of whether it is necessary to fulfill the purpose of the statute." *Id.* at 234. Once detention becomes unreasonably prolonged, "the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Id.* at 231. *Diop*, which dealt with a detention of nearly three years, did not address the length of time at which an alien's detention becomes unreasonably prolonged. The Third Circuit subsequently addressed this issue in *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015). There, the Third Circuit held that the Due Process Clause limits the Government's authority under 8 U.S.C. § 1226(c) to detain an alien without bond once the burdens to the alien's "liberties outweigh[] any justification for using presumptions to detain him without bond to further the goals of the statute." *Id.* at 478 (finding that "beginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time Chavez–Alvarez had been detained for one year, the burdens to Chavez–Alvarez's liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute"). The Third Circuit noted, however, that the determination of reasonableness of detention is "highly fact-specific." *Id.* at 474, 476-477 (explaining that the Petitioner's good faith, the bona fides of Petitioner's challenge, and the reasonableness of the Government's conduct matter in determining when "a tipping point had

6

been reached on the reasonableness of this detention").

Like § 1226(c), which requires mandatory detention of certain criminal aliens, § 1225(b)(2)(A) requires mandatory detention of arriving aliens. *See* 8 C.F.R. § 235.5(b)(2)(iii); *see also Tineo*, 350 F.3d at 387. The statute provides as follows: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien <u>shall</u> be detained for [removal proceedings]." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Like criminal aliens detained under § 1226(c), arriving aliens detained pursuant to § 1225(b)(2)(A) are <u>not</u> entitled to a bond hearing. *See, e.g.*, 8 C.F.R. § 1003.19(h)(2)(i)(B). The only parole relief contemplated by the statute and regulations permits the Attorney General, through the DHS, to parole such aliens into the United States if "urgent humanitarian reasons or significant public benefit" so warrant. *See* 8 U.S.C. § 1182(d)(5)(A). Furthermore, an immigration judge does not have authority to review the Attorney General's parole determination. 8 C.F.R. § 1003.19(h)(2)(i)(B).

Thus, under the statutory and regulatory framework of § 1225(b)(2)(A), arriving aliens, including LPRs like Petitioner who resided continuously in the United States and departed only for a brief period, do not receive an individualized hearings to determine if flight risk and danger to the community justify detention. *See* 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 1003.19(h)(2)(i)(B). As a result, unless required by the Constitution, Petitioner here is not entitled to release or bond hearing pursuant to the statutory scheme. *See e.g., Alghazali v. Tsoukaris*, No. CV 16-9055 (JLL), 2017 WL 3191513, at *3 (D.N.J. July 27, 2017) ("Because Petitioner is not entitled to relief from detention under the statutory and regulatory scheme, Petitioner would only be able to receive the bond hearing he seeks in this matter if the Due Process Clause so required.")

Several courts in this District have considered whether aliens detained under § 1225(b)(2)(A) have a due process right to avoid unreasonably prolonged detention. In *Damus v. Tsoukaris*, No. 16-933, 2016 WL 4203816 (D.N.J. Aug. 8, 2016), Chief Judge Linares held that "an alien's detention subject to § 1225(b)(2)(A) is subject to the limitation that his detention may continue only for a reasonable time at which point his continued detention would need to be warranted by more than a presumption based on his status as an applicant for admission alone." *Id.* Judge Linares determined that aliens seeking admission have less due process protections than those being held under § 1226(c) so that the reasonableness presumption announced by the Third Circuit in *Chavez-Alvarez* did not apply. *Id.* While the court in *Damus* acknowledged that "it is unclear at what point in time such concerns would rise to level of requiring redress," it nevertheless held that the petitioner's detention of approximately eleven months was not yet unreasonable. *Id.; see also Alghazali*, 2017 WL 3191513, at *5 (J. Linares) (fifteen month detention not unreasonable).

Following *Damus*, Judge Wigenton addressed the same question in *Gregorio-Chacon v. Lynch*, No. 16-2768, 2016 WL 6208264 (D.N.J. Oct. 24, 2016). Judge Wigenton similarly found that aliens being held pursuant to § 1225(b)(2)(A) had some procedural due process protections. *Id.* at *5. The court in *Gregorio-Lynch* likewise determined that such protections were not coextensive with the protection afforded to those detained under § 1226(c) and, as a result, that a detention period of six months did not run afoul of the Due Process Clause. *Id.*

Most recently, in *Salazar v. Rodriguez*, No. CV 17-1099 (JMV), 2017 WL 3718380, at *6 (D.N.J. Aug. 29, 2017) Judge Vasquez, "agree[d] with the conclusions reached [by the other District Judges and found] that the Petitioner, being held as an arriving alien pursuant to § 1225(b)(2)(A), has some procedural due process rights." The court further held that Petitioner

8

who had been detained for one year was entitled to an individualized bond hearing.[6] *See id.*

This Court also agrees that Petitioner has some procedural due process rights as an arriving alien held pursuant to § 1225(b)(2)(A). *Cf. Castro*, 835 F.3d at 449 n. 32 ("We doubt . . . that Congress could authorize, or that the Executive could engage in, the indefinite, hearingless detention of an alien simply because the alien was apprehended shortly after clandestine entrance."); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 808 (W.D. Tex. 2015) ("Because aliens detained under § 1225(b)(2)(A) have no access to an individualized determination regarding whether they are properly placed in the § 1225(b)(2)(A) category or properly detained because they present a flight risk and a danger to the community, the Court finds that detention pursuant to § 1225(b)(2)(A) is subject to a reasonable time limitation."). Here, the Court need not decide whether aliens detained pursuant to § 1225(b)(2)(A) have the same due process protections as aliens held under § 1226(c), *see Zadvydas*, 533 U.S. at 693. ("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders.") (citations omitted); Petitioner has been detained for more than twenty eight months, which exceeds a reasonable period even if the Court were to afford him less protection that an alien detained under § 1226. Because Petitioner has been detained over twenty eight months, well beyond the periods considered by other Courts in this District, Petitioner is entitled to an individualized bond

---

[6] The Middle District of Pennsylvania has also ruled on the same issue. *See Singh v. Sabol*, No. 16-2246, 2017 WL 1659029 (M.D. Pa. Apr. 6, 2017), *report and recommendation adopted*, 2017 WL 1541847 (M.D. Pa. Apr. 28, 2107). The court in *Singh* found that "arriving aliens detained pre-removal pursuant to § 1225(b) have a due process right to an individualized bond consideration once it is determine that the duration of their detention has become unreasonable." *Id.* at *4 (citation omitted). In *Singh*, the court determined that the period for which the petitioner had been detained, twenty-nine months, was unreasonable and ordered that the petitioner receive an individualized bond hearing within thirty days. *Id.*

hearing before an immigration judge.[7]

## IV. CONCLUSION

For the reasons stated in this Opinion, the Court will grant the Petition. Respondent shall afford Petitioner with an individualized bond hearing before an immigration judge within ten (10) days of the date of the Order accompanying this Opinion. An appropriate Order follows.

_____
Madeline Cox Arleo, U.S.D.J.

Date Sept 19, 2017.

---

[7] The Court also need not decide whether arriving aliens who are not LPRs are entitled to the same due process protections as arriving aliens who are LPRs.